# Illinois Official Reports

## Supreme Court

**_People v. Shunick_, 2024 IL 129244**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CHAR M. SHUNICK, Appellant. |
| Docket No. | 129244 |
| Filed | May 23, 2024 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Knox County, the Hon. Raymond Cavanaugh, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. <br> Circuit court judgment vacated. |
| Counsel on Appeal | James E. Chadd, State Appellate Defender, Catherine K. Hart, Deputy Defender, and Austin Wright, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellant. <br><br> Kwame Raoul, Attorney General, of Springfield (Jane Elinor Notz, Solicitor General, and Katherine M. Doersch and Aaron M. Williams, Assistant Attorneys General, of Chicago, of counsel), for the People. |

JUSTICE OVERSTREET delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

## OPINION

¶ 1        Petitioner, Char M. Shunick, filed a petition for postconviction relief pursuant to the Post-Conviction Hearing Act. 725 ILCS 5/122-1 *et seq.* (West 2020). The circuit court of Knox County summarily dismissed the petition at the first stage and denied petitioner's motion to reconsider the dismissal. The appellate court found that petitioner's motion to reconsider was untimely and, as a result, his notice of appeal was also untimely. 2022 IL App (4th) 220019, ¶ 21.[1] Accordingly, the appellate court concluded that it lacked jurisdiction to address the substantive merits of the appeal, thereby limiting its review and disposition to vacating the circuit court's denial of the motion to reconsider and dismissing the motion to reconsider as untimely. *Id.* ¶¶ 1, 21, 26. For the following reasons, we affirm the judgment of the appellate court.

¶ 2                                              I. BACKGROUND
¶ 3                                  A. Charges, Trial, and Sentencing
¶ 4        On January 15, 2016, the State charged petitioner, by information, with unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(B) (West 2016)) and unlawful possession of a controlled substance (*id.* § 402(a)(2)(B)). After a bench trial, petitioner was convicted of both offenses. The circuit court merged the offenses and sentenced petitioner to a 16-year prison term. Petitioner filed a motion to reconsider the sentence. At the hearing on the motion to reconsider, the circuit court indicated that, after sentencing, it discovered that petitioner had been shackled during the sentencing hearing. The circuit court noted that, if petitioner were to raise that issue on direct appeal, the appellate court may remand for a new sentencing hearing. As such, the circuit court offered to reduce the sentence to the nine-year minimum in exchange for petitioner waiving his right to a direct appeal while retaining his right to file a postconviction petition. Petitioner accepted the offer and was sentenced to a nine-year prison term.

¶ 5                                    B. Postconviction Petition
¶ 6        On September 20, 2021, petitioner filed a *pro se* petition for postconviction relief, arguing that (1) pretrial counsel who represented him before the trial had a *per se* conflict of interest, (2) trial counsel provided ineffective assistance by failing to object to the prosecution's concealing the identity of a confidential informant, (3) his request for counsel was denied prior to his arrest, (4) his arrest and strip search violated the fourth amendment, (5) the circuit court's

---

[1]These findings were originally set forth in a Rule 23 order, which the appellate court withdrew. The findings were subsequently published in a modified opinion on denial of rehearing. See 2022 IL App (4th) 220019.

refusal to grant a continuance violated due process, and (6) the circuit court violated his right to a fair trial by keeping him shackled during the trial and sentencing.

¶ 7 On September 30, 2021, the circuit court entered an order summarily dismissing the postconviction petition. The circuit court found that petitioner's conflict-of-interest claim was patently without merit because pretrial counsel withdrew several months before trial and petitioner was represented by different counsel at trial. The circuit court rejected the remaining claims as barred by petitioner's knowing and voluntary waiver of his direct appeal. The circuit court's docket entry of September 30, 2021, reflects that a courtesy copy of the dismissal order was sent to petitioner.

¶ 8                                C. Motion to Reconsider

¶ 9 Subsequently, petitioner filed a "Motion to Reconsider and Leave to Amend Petition for Post Conviction Relief Under 725 ILCS 5/122-1." The last page of the motion to reconsider contained a "CERTIFICATE OF SERVICE," which provided:

> "This is to certify [t]hat I have on this date served true and correct copies of the foregoing to:
>
> Clerk of the Circuit Court of Knox County and;
>
> Knox County States Attorney
>
> via U.S. Mail postage fully prepaid on this 26th Day of Oct 2021 by depositing the same in the institutional mailbox at Dixon C.C."

The motion to reconsider was file-stamped by the circuit clerk on November 3, 2021.

¶ 10 On December 14, 2021, the circuit court entered an order denying petitioner's motion to reconsider.[2] Petitioner filed a *pro se* notice of appeal on January 5, 2022. Counsel was appointed to represent petitioner on January 6, 2022. Appointed counsel filed an amended notice of appeal on January 11, 2022.

¶ 11                                D. Appellate Court

¶ 12 At the outset, the appellate court determined that it lacked jurisdiction to consider the substantive merits of the appeal because petitioner's motion to reconsider and notice of appeal were both untimely. 2022 IL App (4th) 220019, ¶¶ 1, 13, 21. The appellate court acknowledged that, although the prison mailbox rule may overcome a file stamp, the rule also requires an acceptable proof of service. *Id.* ¶ 17. To that regard, the appellate court observed that Illinois Supreme Court Rule 12(b)(6) (eff. July 1, 2017) requires a proof of service by an incarcerated, *pro se* litigant to be by certification under section 1-109 of the Code of Civil Procedure (Code) (735 ILCS 5/1-109 (West 2020)). 2022 IL App (4th) 220019, ¶ 17. The appellate court concluded that the certificate of service at the foot of petitioner's motion to reconsider was inadequate because of two deficiencies. *Id.* ¶ 18.

¶ 13 First, the certificate of service contained no language resembling the language prescribed by section 1-109. *Id.* The appellate court explained that, to be substantially in the form of section 1-109, the certificate must contain the " 'main features' " or " 'substance' " of the language of that section, but petitioner's certificate contained only one word from the section—

---

[2]The circuit court provided no reasoning or explanation and simply denied the motion to reconsider.

"certif[y]"—and it lacked a verification subject to the penalties provided in the section. *Id.* ¶ 19 (quoting *People ex rel. Davis v. Chicago, Burlington & Quincy R.R. Co.*, 48 Ill. 2d 176, 183 (1971)). Accordingly, the appellate court found the certificate lacked a main feature of section 1-109 and, as such, was not substantially in the form prescribed by the section. *Id.*

¶ 14 Second, the certificate of service failed to provide the complete address to which the motion was to be delivered, as required by Rule 12(b)(6). *Id.* ¶ 20. The appellate court rejected petitioner's claim that this omission was minor, as the absence of *any* address is not a minor defect. *Id.* (citing *People v. Liner*, 2015 IL App (3d) 140167, ¶ 17).

¶ 15 Because of these two deficiencies, the appellate court concluded that the certificate of service in petitioner's motion to reconsider failed to satisfy the requirements of Rule 12(b)(6). *Id.* ¶ 21. Consequently, the date of the circuit clerk's file stamp controlled, rendering the motion to reconsider untimely. *Id.* Because the untimely motion to reconsider failed to toll the 30-day period for filing a notice of appeal, petitioner's notice of appeal was also untimely. *Id.* For these reasons, the appellate court concluded that it lacked jurisdiction to consider the substantive merits of the appeal. *Id.* ¶¶ 1, 21.

¶ 16 The appellate court declined petitioner's invitation to follow *People v. Cooper*, 2021 IL App (1st) 190022, and order a remand to allow him to file a compliant certificate of service, reasoning that *Cooper* could not be squared with existing precedent. 2022 IL App (4th) 220019, ¶¶ 22-24. Following *People v. Bailey*, 2014 IL 115459, the appellate court concluded that the circuit court lacked jurisdiction to rule on petitioner's untimely motion to reconsider. 2022 IL App (4th) 220019, ¶ 24. Therefore, the appellate court vacated the circuit court's order denying the motion to reconsider and dismissed the motion. *Id.* ¶ 26. This court allowed petitioner's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2021).

¶ 17                                    II. ANALYSIS

¶ 18 Petitioner raises the following issues, which we have restated as follows: (1) whether petitioner substantially complied with the proof-of-mailing requirements of Rule 12(b)(6) such that his motion to reconsider was timely filed under the Illinois mailbox rule, rendering his subsequent notice of appeal timely and establishing appellate court jurisdiction over the substantive merits of his appeal, and (2) if petitioner did not substantially comply with the proof-of-mailing requirements of Rule 12(b)(6), whether the appellate court had jurisdiction to order a remand to allow petitioner to cure the jurisdictional defect by supplying a compliant certificate of service. These jurisdictional issues and the underlying questions concerning the interpretation of this court's rules are all questions of law that we review *de novo*. *People v. English*, 2023 IL 128077, ¶ 13.

¶ 19                              A. Substantial Compliance

¶ 20 We first consider whether petitioner substantially complied with the proof-of-mailing requirements of Rule 12(b)(6) such that his motion to reconsider was timely filed under the Illinois mailbox rule, rendering his subsequent notice of appeal timely and establishing appellate court jurisdiction over the substantive merits of his appeal.

¶ 21                              1. Interpreting Illinois Supreme Court Rules

¶ 22        The process of interpreting this court's rules is governed by principles of statutory interpretation. *Id.* This court's rules " 'have the force of law' and are 'not aspirational.' " *Id.* (quoting *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995)). As with statutes, the goal in interpreting this court's rules "is to give effect to our intent, most often through the 'plain and ordinary meaning' of the rule." *Id.* (quoting *People v. Glisson*, 202 Ill. 2d 499, 504 (2002)). "When a rule is 'plain and unambiguous, we may not depart from [its] terms by reading into it exceptions, limitations, or conditions [this court] did not express, nor may we add provisions not found in the [rule].' " *Id.* (quoting *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24). Moreover, when the language of the rule is clear and unambiguous, we apply it as written without resorting to aids of construction. *People v. Gorss*, 2022 IL 126464, ¶ 10.

¶ 23                                        2. Timeliness

¶ 24        Under this court's rules, "filing a notice of appeal is the only jurisdictional step in perfecting an appeal." *People v. Walls*, 2022 IL 127965, ¶ 18 (citing Ill. S. Ct. R. 606(a) (eff. Dec. 1, 1999)). The jurisdiction of the appellate court hinges on whether the litigant complied with the deadlines set forth in this court's rules. *People v. Salem*, 2016 IL 118693, ¶ 11. Pursuant to Illinois Supreme Court Rule 606 (eff. July 1, 2017), appeals are perfected by filing a notice of appeal "with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from *or if a motion directed against the judgment is timely filed*, within 30 days after the entry of the order disposing of the motion." (Emphasis added.) Accordingly, a postconviction petitioner may file a motion to reconsider a first-stage, summary dismissal within 30 days of the entry of the judgment without first filing a notice of appeal. See *id.*; *People v. Rivera*, 198 Ill. 2d 364, 371 (2001) (" 'first-stage dismissals are final and appealable judgments' " (quoting *People v. Noel*, 291 Ill. App. 3d 541, 544 (1997))); 735 ILCS 5/2-1203(a) (West 2020) (30-day deadline to file a motion to reconsider judgment in a nonjury civil action); *People v. Bailey*, 2017 IL 121450, ¶ 29 (general rules of civil procedure apply to postconviction proceedings so long as they do not conflict with the Post-Conviction Hearing Act).

¶ 25        Here, the circuit court entered a final judgment summarily dismissing petitioner's postconviction petition on September 30, 2021. Petitioner had 30 days to file either a notice of appeal or a motion to reconsider that judgment—with a deadline of November 1, 2021.[3] See Ill. S. Ct. R. 606(b) (eff. July 1, 2017); *Rivera*, 198 Ill. 2d at 371; see also 735 ILCS 5/2-1203(a) (West 2020); *Bailey*, 2017 IL 121450, ¶ 29. It is undisputed that petitioner did not file his notice of appeal within 30 days after the circuit court entered its final judgment. At issue is whether petitioner timely filed his motion to reconsider, thus tolling the 30-day deadline to file his notice of appeal. The circuit clerk file-stamped petitioner's motion to reconsider on November 3, 2021—two days after the filing deadline. Accordingly, unless the mailbox rule applies, the date of the file stamp controls, rendering the motion to reconsider—and the

_____

[3]The State aptly notes that, because the last day of the 30-day interval was Saturday, October 30, 2021, the filing deadline was the following Monday, November 1, 2021. See 5 ILCS 70/1.11 (West 2020) (providing method of calculating filing due dates); *City of Chicago v. Greene*, 47 Ill. 2d 30, 33 (1970) (applying that method to calculate notice of appeal due date).

subsequent notice of appeal—untimely.

¶ 26                              3. Filing Procedure and Mailbox Rule

¶ 27    Illinois Supreme Court Rule 373 (eff. July 1, 2017) governs deadlines for filing in reviewing courts and provides that "the time of filing" is when the subject document is "actually received by the clerk of the reviewing court." See Ill. S. Ct. R. 612(b)(18) (eff. July 1, 2017) (making Rule 373 applicable to criminal appeals). This court's version of the mailbox rule is set forth in Rule 373 and provides that, if the filing in the reviewing court is "received after the due date, the time of mailing by an incarcerated, self-represented litigant shall be deemed the time of filing." Ill. S. Ct. R. 373 (eff. July 1, 2017). Rule 373 adds that "[p]roof of mailing shall be as provided in Rule 12." *Id.*; see *English*, 2023 IL 128077, ¶ 18 ("litigants cannot supply proof of mailing in ways other than those expressly listed in Rules 373 and 12"); *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 216 (2009) (mailbox rule applies only if the litigant "files proper proof of mailing as required by Rule [12]"). To summarize, "the sole means of establishing 'time of mailing' under Rule 373 in the case of a *pro se* incarcerated litigant is by certification as described in Rule 12(b)(6) [citation]." *English*, 2023 IL 128077, ¶ 2. Applied here, the mailbox rule applies to petitioner's motion to reconsider so long as he satisfied the requirements of Rule 12(b)(6).

¶ 28                              a. Illinois Supreme Court Rule 12(b)(6)

¶ 29    Illinois Supreme Court Rule 12(b)(6) (eff. July 1, 2017) sets forth, in relevant part, the following manner of service:

> "[I]n case of service by mail by a self-represented litigant residing in a correctional facility, by certification under section 1-109 of the Code of Civil Procedure of the person who deposited the document in the institutional mail, stating the time and place of deposit and the complete address to which the document was to be delivered."

¶ 30    Petitioner notes that this court has not yet addressed the issue of substantial compliance with Rule 12(b)(6), but he cites *People v. Dominguez*, 2012 IL 111336, ¶¶ 15-22, in which this court examined substantial compliance with Rule 605(c) (Ill. S. Ct. R. 605(c) (eff. Oct. 1, 2001)). In *Dominguez*, 2012 IL 111336, ¶ 19, this court held that the word "substantially" in Rule 605(c) "does not require a strict verbatim reading of the rule *** to 'substantially advise' defendants of its contents." This court held, rather, that "the court must impart *** largely that which is specified in the rule, or the rule's 'essence,' as opposed to 'wholly' what is specified in the rule." *Id.*

¶ 31    Here, petitioner urges this court to follow *Dominguez* and likewise construe Rule 12(b)(6) such that a proof of mailing that does not contain the contents of the rule verbatim is nonetheless substantially compliant if it imparts "largely that which is specified" by supplying the "essence" of the rule's requirements. See *id.* We agree that the *Dominguez* principles also apply in the context of construing Rule 12(b)(6). As such, substantial compliance with Rule 12(b)(6) does not require a strict verbatim repetition, so long as the essence of the requirements is included such that the document contains largely what is specified in the rule. See *id.*

¶ 32    At this point, we note—and reject—petitioner's claim that the appellate court "impose[d] strict compliance where only substantial compliance is required." The appellate court found that petitioner failed to satisfy Rule 12(b)(6) because his proof of service included only one

- 6 -

word from section 1-109 ("certif[y]"), lacked a certification subject to the penalties set forth in that section, and failed to include the complete address to which the motion was to be delivered. 2022 IL App (4th) 220019, ¶¶ 19-21. Moreover, the appellate court identified the enforcement of the truthfulness of a statement as a "main feature" of section 1-109 (*id.* ¶ 19), which is congruent with a substantial compliance analysis. See *Dominguez*, 2012 IL 111336, ¶ 19. There is nothing to suggest that the appellate court imposed strict compliance or analyzed petitioner's certificate under a strict compliance standard, and we reject petitioner's suggestions to the contrary.

¶ 33    Applying the principles of *Dominguez* here, petitioner maintains that he substantially complied with Rule 12(b)(6) because his proof of mailing contained the essence of what the rule requires, including the date of mailing, his signature, "and other factual representations designed to establish the remaining requirements of Rule 12(b)(6)." We disagree.

¶ 34    The plain language of Rule 12(b)(6) requires the manner of service by petitioner—a *pro se* litigant residing in a correctional facility—(1) to provide service by certification under section 1-109 of the Code, (2) to state the complete address to which the document was to be delivered, and (3) to state the time and place of deposit. See Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017). Petitioner failed to satisfy the first two requirements, thus failing to substantially comply with Rule 12(b)(6). We examine those requirements in detail. The third requirement is not at issue in this appeal.

¶ 35                          i. *Illinois Code of Civil Procedure Section 1-109*

¶ 36    Rule 12(b)(6) prescribes service by certification under section 1-109 of the Code, which requires "[t]he person *** having knowledge of the matters stated in a pleading, affidavit or other document" to

> "subscribe to a certification in substantially the following form: Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true." 735 ILCS 5/1-109 (West 2020).

¶ 37    Petitioner's proof of mailing provides:

> "This is to certify [t]hat I have on this date served true and correct copies of the foregoing to:
>
> Clerk of the Circuit Court of Knox County and;
>
> Knox County States Attorney
>
> via U.S. Mail postage fully prepaid on this 26th Day of Oct 2021 by depositing the same in the institutional mailbox at Dixon C.C."

¶ 38    Petitioner argues that his proof of mailing "contains the substance or main features" of, or "the essence of the form" of, section 1-109, resulting in substantial compliance with the certification requirement. See 2022 IL App (4th) 220019, ¶ 19; *Dominguez*, 2012 IL 111336, ¶ 19. Petitioner clarifies that "[t]he remaining verbiage appearing in section 1-109 that is absent from [his] certification, relating to matters stated 'on information and belief,' does not alter

this conclusion because [he] had personal knowledge of his mailing of the motion." We disagree.

¶ 39 Petitioner's certificate was not substantially in the form required by section 1-109 because it did not include (1) a verification under penalty of perjury (2) that the statements set forth in the document were true and correct. See 735 ILCS 5/1-109 (West 2020). We examine each of these components in detail.

¶ 40                                    a. *Verification Under Penalties*

¶ 41 First, the certificate did not include a verification "[u]nder penalties as provided by law pursuant to Section 1-109." *Id.* The appellate court suitably identified the enforcement of the truthfulness of a statement as a "main feature" of section 1-109. See 2022 IL App (4th) 220019, ¶ 19. At its outset, section 1-109 indicates that, when a document filed in court "is required *** to be verified, or made, sworn to or verified under oath," that requirement is "defined to include a certification" of the "document under penalty of perjury as provided in this Section." 735 ILCS 5/1-109 (West 2020). In its concluding paragraph, section 1-109 describes criminal liability resulting from deliberate false statements in the document. See *id.* The body of section 1-109 requires a certification, subjecting the filer of the document to such criminal liability if the document contains a deliberate false statement. See *id.*

¶ 42 References to false statements and the penalties therefor are specified largely throughout section 1-109—at the beginning, end, and points in between—thus clearly constituting the essence of the section. See *id.*; *Dominguez*, 2012 IL 111336, ¶ 19. As such, if a certification lacks language subjecting the filer to the penalties set forth in section 1-109, the certificate is not substantially in the form required by the section. See *id.*

¶ 43 Petitioner argues that requiring such language mandates strict compliance, as the desired veracity of the filing may be accomplished by other means. Petitioner explains that, "should a court determine that [a] representation was deliberately untruthful," his signature on the proof of mailing subjects him to several other penalties by operation of law. He notes in particular Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018), section 22-105 of the Code (735 ILCS 5/22-105 (West 2020)), and procedures such as contempt proceedings, all of which provide penalties for untruthfulness. We acknowledge the existence of other penalties, yet we cannot agree that being subject to those penalties establishes substantial compliance with Rule 12(b)(6) or excuses the filer from the requirements thereof.

¶ 44 As this court indicated in *English*, 2023 IL 128077, ¶ 18, "litigants cannot supply proof of mailing in ways other than those expressly listed in Rules 373 and 12." See *Secura*, 232 Ill. 2d at 216 ("a party can only take advantage of Rule 373 if it files proper proof of mailing as required by Rule [12]"). Again, our rules " 'have the force of law' and are 'not aspirational.' " *English*, 2023 IL 128077, ¶ 13 (quoting *Bright*, 166 Ill. 2d at 210). Moreover, we may not graft exceptions or provisions onto a rule that do not exist. *Id.* ¶¶ 30-31. Nor may we interpret a rule in such a way to render any part of it superfluous. *Dominguez*, 2012 IL 111336, ¶ 16.

¶ 45 Applied to this case, the plain language of the mailbox rule provides that "[p]roof of mailing shall be as provided in Rule 12." Ill. S. Ct. R. 373 (eff. July 1, 2017). The plain language of Rule 12(b)(6) requires certification under section 1-109 of the Code (Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017)), which in turn requires a verification under penalties provided in that section (735 ILCS 5/1-109 (West 2020)). Overlooking noncompliance with these rules

simply because other means of penalties exist would disregard the plain language of the rules and render it superfluous, which is unacceptable. See *Dominguez*, 2012 IL 111336 ¶ 16; *English*, 2023 IL 128077, ¶ 31. Accordingly, notwithstanding the existence of other sources providing penalties for untruthfulness, petitioner was still required to substantially comply with Rules 373 and 12(b)(6).

¶ 46 We are mindful that this court could have chosen other methods of proof but did not do so. Because section 1-109 certifications are considered reliable enough to substitute for sworn statements, this court chose this method of proof to ensure the truthfulness of filings by means of verification under penalty of perjury. See Ill. S. Ct. Rs. 373, 12(b)(6) (eff. July 1, 2017); 735 ILCS 5/1-109 (West 2020). Here, petitioner's certificate lacked a verification subjecting him to the penalties provided in section 1-109. Accordingly, the certificate was not substantially in the form required by section 1-109 and, as such, failed to substantially comply with Rule 12(b)(6). See 735 ILCS 5/1-109 (West 2020); Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017).

¶ 47                                          b. *True and Correct Statements*

¶ 48 Besides lacking a verification under penalties provided in section 1-109, petitioner's certificate did not verify "that the *statements* set forth in this instrument are true and correct." (Emphasis added.) 735 ILCS 5/1-109 (West 2020). Petitioner certified, rather, that he "served true and correct *copies* of the foregoing." (Emphasis added.)

¶ 49 Petitioner points out that the appellate court incorrectly found that "certif[y]" was the only word from section 1-109 contained in the certificate. See 2022 IL App (4th) 220019, ¶ 19. Petitioner stresses that, in addition to "certify," he also used the words "true and correct" and, as such, the certificate "substantially tracks the model language in section 1-109." We disagree and find that, notwithstanding petitioner's noted inaccuracy, the appellate court's conclusion that the certificate did not substantially comply with the form of section 1-109 is nonetheless correct.

¶ 50 The State properly asserts that, just as "an affidavit must be sworn to, and statements in a writing not sworn to before an authorized person cannot be considered [an affidavit]" (*Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 493 (2002)), it follows that a certificate lacking language that the statements set forth in the document are "true and correct" and "under penalty of perjury" or "[u]nder penalties as provided by law pursuant to Section 1-109" cannot be considered a "[v]erification by certification." See 735 ILCS 5/1-109 (West 2020).

¶ 51 The purpose of section 1-109 is to provide a certification that "may be used in the same manner and with the same force and effect as though subscribed and sworn to under oath," as a substitute for a sworn affidavit. *Id.*; see *People v. Allen*, 2015 IL 113135, ¶ 32 (sworn affidavit "ensure[s] that [the] person understands that he subjects himself to penalties of perjury"); *People v. Badoud*, 122 Ill. 2d 50, 55 (1988) ("perjury sanctions [provide] an assurance of veracity"). Serving "true and correct *copies*" simply cannot accomplish that purpose. (Emphasis added.) Nor does the mere use of the words "true and correct" "substantially track[ ] the model language in section 1-109."

¶ 52 Petitioner's statement regarding the absence of "[t]he remaining verbiage appearing in section 1-109" has no bearing on our conclusion. It is axiomatic that the certificate must contain a verification that the statements in the filing are true and correct. That language was absent from the certificate, and petitioner fails to explain its absence in his "remaining verbiage"

argument. Because petitioner's certificate did not verify that the statements in the document were true and correct, the certificate was not substantially in the form required by section 1-109 and, as such, failed to substantially comply with Rule 12(b)(6). See 735 ILCS 5/1-109 (West 2020); Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017).

¶ 53                                    ii. *Complete Address*

¶ 54        Besides certification under section 1-109 of the Code, Rule 12(b)(6) also requires the certificate to state "the *complete address* to which the document was to be delivered." (Emphasis added.) Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017). In this case, petitioner's certificate failed to state the complete address but merely reflected that it was mailed to the "Clerk of the Circuit Court of Knox County and; Knox County States Attorney."

¶ 55        Petitioner concedes that the proof of mailing lacks a street address. Yet he argues that limiting the inquiry to the four corners of the proof of mailing "is akin to strict compliance," produces an "unjust result," and punishes him "for the clerk's opting not to retain the envelope for inclusion in the record." Petitioner explains that substantial compliance with Rule 12(b)(6) may be inferred from "competent circumstantial evidence that the document was mailed to the correct address." In support, he cites *People v. Hansen*, 2011 IL App (2d) 081226, and *People v. Humphrey*, 2020 IL App (1st) 172837, which relied on postmark evidence to establish substantial compliance with the mailbox rule.

¶ 56        This court considered those decisions in *English*, 2023 IL 128077, ¶¶ 28-31, and rejected them as inconsistent with our "clear and unambiguous rules." Though *English* involved the timeliness of the filing of a notice of appeal containing a postage meter stamp, the principles of that decision regarding compliance with this court's rules are applicable to this case. We concluded in *English* that, because the petitioner failed to file the appropriate certification under section 1-109 "stating the time and place of deposit and the complete address to which the document was to be delivered," the mailbox rule did not apply, the notice of appeal was considered filed when the clerk of the circuit court received it beyond the due date, and the appellate court lacked jurisdiction to consider the merits of the appeal. *Id.* ¶ 36. This conclusion likewise applies in this case.

¶ 57        Petitioner alternatively suggests that the absence of a street address "should be remedied by *** [taking] judicial notice" of the address provided on the Knox County website and "of the fact that the clerk had, at the time of mailing, been located at [that address] for approximately 135 years." We decline petitioner's invitation to take judicial notice of the address, as doing so would disregard the requirements of our rules. Instead, we apply the plain language of our rules as written. See *id.* ¶ 31; *Gorss*, 2022 IL 126464, ¶ 10.

¶ 58        The plain language of the mailbox rule provides that "[p]roof of mailing shall be as provided in Rule 12." Ill. S. Ct. R. 373 (eff. July 1, 2017). The plain language of Rule 12(b)(6) requires the manner of service by petitioner to state the complete address to which the document was to be delivered. See Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017). Petitioner's argument reads the "complete address" requirement out of Rule 12(b)(6) and renders its language superfluous, which is unacceptable. See *Dominguez*, 2012 IL 111336, ¶ 16. We agree with the appellate court that the " 'failure to include *any* address' " (emphasis in original) (2022 IL App (4th) 220019, ¶ 20 (quoting *Liner*, 2015 IL App (3d) 140167, ¶ 17)) is not a minor defect and rendered the certificate insufficient to prove that it was timely mailed (*id.* ¶ 21).

¶ 59          Finally, we note that petitioner's argument disregards that the address requirement of Rule 12(b)(6) exemplifies "a certain form of proof reliant only on the litigant" that "provide[s] incarcerated *pro se* litigants with a guaranteed method to prove that their [document] was timely placed in the institutional mail." *English*, 2023 IL 128077, ¶ 32. As such, Rule 12(b)(6) avoids "uncertain form[s] of proof reliant on a third party" and seeks to ensure that the circuit court timely receives the documents necessary to establish jurisdiction. *Id.* Though providing an adequate certificate of service was entirely in petitioner's hands, he failed to do so.

¶ 60          To summarize, the plain language of Rule 12(b)(6) requires the certificate to state the complete address to which the document is to be delivered, and we refuse to read into the rule the exceptions and/or additions petitioner suggests. See *id.* ¶¶ 30-31. Petitioner's certificate did not include a complete address and, as such, failed to substantially comply with Rule 12(b)(6). See Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017).

¶ 61                                    4. *Pro Se* Court Filings

¶ 62          Petitioner next contends that finding substantial compliance "would be consistent with longstanding treatment of *pro se* court filings by Illinois courts." Petitioner acknowledges that his *pro se* status does not excuse the complete failure to produce documents required by this court's rules. See *People v. Arriaga*, 2023 IL App (5th) 220076; *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514 (2001); *Domenella v. Domenella*, 159 Ill. App. 3d 862 (1987). He maintains, however, that he did not completely fail to produce the proof of mailing under Rule 12(b)(6) but, "at worst, *** left a bit to be desired."

¶ 63          Citing *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433 (1979), petitioner urges that, because perfection is not required "even from represented parties" when "drafting a jurisdictionally necessary notice of appeal," it certainly follows that perfection should not be required of him—a *pro se*, incarcerated litigant—when drafting his own proof of mailing. Petitioner asserts that he made a good-faith effort to comply with Rule 12(b)(6) and "[i]t would be the height of unfairness" to deny him "the benefit of a full post[ ]conviction review *** because, due to his incarceration and lack of legal experience, he was unable to correctly identify the most critical components of Rule 12(b)(6)." We disagree.

¶ 64          Proceeding *pro se* does not excuse petitioner's failure to comply with this court's rules, as he presumably had "full knowledge of applicable court rules and procedures, including procedural deadlines with respect to filing motions." *Steinbrecher*, 197 Ill. 2d at 528. Petitioner was required to comply with this court's procedural rules, and his *pro se* status does not entitle him to more leniency. See *English*, 2023 IL 128077, ¶ 33. Moreover, Rule 606(c) ameliorates "any perceived harshness in our rules" by invoking a remedy when a notice of appeal is untimely. *Id.*

¶ 65          As the State points out, "filing a compliant certificate of service is not particularly difficult," as demonstrated by petitioner's postconviction petition in the record, which includes the circuit court's address as well as language substantially in the form of section 1-109. Moreover, in *English*, we rejected the argument that a straightforward application of Rules 373 and 12(b)(6) leads to harsh or unfair results. *English*, 2023 IL 128077, ¶ 32.

¶ 66          Because petitioner's certificate failed to substantially comply with Rule 12(b)(6), the mailbox rule does not apply, and his motion to reconsider was untimely, rendering his notice of appeal untimely. Accordingly, the appellate court correctly concluded that it lacked

- 11 -

jurisdiction to consider the merits of petitioner's appeal. See 2022 IL App (4th) 220019, ¶¶ 1, 21.

¶ 67                            B. Jurisdiction to Remand

¶ 68    Having found that petitioner failed to substantially comply with the proof-of-mailing requirements of Illinois Supreme Court Rule 12(b)(6), we next consider whether the appellate court had jurisdiction to order a remand to allow petitioner to cure the jurisdictional defect by supplying a compliant certificate of service. The appellate districts are divided regarding the propriety of such a remand. Compare 2022 IL App (4th) 220019, ¶¶ 22-24, *Arriaga*, 2023 IL App (5th) 220076, ¶¶ 16-20, and *Liner*, 2015 IL App (3d) 140167, ¶¶ 22-26 (refused to remand for compliance with notice requirements under Rule 12(b)(6)), with *Cooper*, 2021 IL App (1st) 190022, ¶¶ 21-22 (remand allowed for defendant to cure jurisdictional defect by supplementing record with compliant Rule 12(b)(6) certificate).

¶ 69    Petitioner relies on *Cooper*, in which "[t]he first apparent remand of this kind occurred." After pleading guilty and being sentenced, the *Cooper* defendant filed a *pro se* motion to withdraw his guilty plea, which was file-stamped one day past the deadline. *Cooper*, 2021 IL App (1st) 190022, ¶ 5. The defendant did not include proof of mailing with the motion. *Id.* ¶ 18. The circuit court conducted a hearing at which it inquired about the date the motion was filed—as opposed to the date it was mailed—and ultimately denied the defendant's motion as untimely. *Id.* ¶ 5.

¶ 70    The appellate court found that the mailbox rule did not apply to render the defendant's motion timely, because the mailbox rule only applies where proof of mailing is provided "in the manner specified by Rule 12" and that did not occur. *Id.* ¶ 18. However, though the defendant failed to provide proof of mailing, that was not the end of the inquiry. See *id.* ¶¶ 19-22. The appellate court indicated that, once the circuit court determined that the motion was file-stamped one day late, "the appropriate next step was to determine if [the defendant] could supplement his motion with the certification required by Rule 12(b)(6) and section 1-109 of the Code." *Id.* ¶ 20. The appellate court found that the circuit court left the proceedings "incomplete" by omitting this "appropriate next step." *Id.* The appellate court found nothing in Rule 12(b)(6) to "prohibit[ ] a litigant from supplementing his filing with a certification proving the date and manner of mailing." *Id.* ¶ 21.

¶ 71    The appellate court observed that, when " 'further trial court hearings are called for in a criminal case,' " the preferred procedure " 'is to remand for those hearings while retaining jurisdiction.' " *Id.* ¶ 22 (quoting *People v. Hill*, 2021 IL App (1st) 131973-B, ¶ 15). The appellate court added that its "authority to do so lies in Rule 615(b)(2)," which allows reviewing courts to " 'set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken.' " *Id.* ¶ 15 (quoting Ill. S. Ct. R. 615(b)(2) (eff. Jan. 1, 1967). Finally, the appellate court indicated that, under Rule 615(b)(2), it "may 'revest the trial court with jurisdiction to complete [those] proceedings [we] found deficient before resuming consideration of the appeal.' " *Id.* (quoting *Hill*, 2021 IL App (1st) 131973-B, ¶ 18). As such, the appellate court remanded "to the circuit court for the limited purpose of inquiring of [the defendant] when his motion was mailed." *Id.* ¶ 24.

¶ 72    Here, given our finding of insubstantial compliance with Rule 12(b)(6), petitioner urges this court to follow *Cooper* and remand to the circuit court to allow him to supplement his

proof of mailing. We decline to follow *Cooper*, as the appellate court correctly indicated that it did not square with existing precedent that (1) when a postjudgment motion does contain sufficient service at the time of filing, the date of the file-stamp controls, (2) a circuit court lacks jurisdiction to rule on an untimely postjudgment motion, and (3) if the circuit court does rule on an untimely postjudgment motion, the jurisdiction of the appellate court is limited to vacating the circuit court's judgment and dismissing the motion. 2022 IL App (4th) 220019, ¶ 23.

¶ 73    The appellate court followed *Bailey*, 2014 IL 115459, ¶ 29, in which this court explained that, where an appellate court lacks jurisdiction to consider the substantive merits of an appeal, it is not completely without jurisdiction but has "the authority conferred on it by law to review, recognize, and correct any action that exceeded the trial court's jurisdiction." In other words, a circuit court's lack of jurisdiction is not a complete bar to appellate jurisdiction, but in such circumstances, "the appellate court is limited to considering the issue of jurisdiction below." *Id.* If the appellate court concludes that the circuit court lacked jurisdiction, the appellate court should vacate the circuit court's judgment and dismiss the subject motion (*id.*), which is exactly what the appellate court did in this case.

¶ 74    Notably, the *Cooper* court based its decision on the erroneous premise that it had jurisdiction to order the remand. The Rule 604(d) postjudgment motion in *Cooper* was untimely because it did not include the proper proof of mailing prescribed by Rule 12. See Ill. S. Ct. R. 12 (eff. July 1, 2017). As such, the motion failed to toll the deadline to file a notice of appeal. See Ill. S. Ct. R. 606(a), (b) (eff. July 1, 2017). Because the notice of appeal was untimely, the appellate court in *Cooper* lacked jurisdiction to consider the merits of the appeal, was limited to vacating the circuit court's order and dismissing the motion, and exceeded the bounds of its jurisdiction in ordering the remand. See *Bailey*, 2014 IL 115459, ¶ 29.

¶ 75    The appellate court in *Cooper* also criticized the circuit court for not determining whether the defendant could supplement the motion with a compliant certificate of service, although the hearing was conducted well past the due date for filing the notice of appeal. See *Cooper*, 2021 IL App (1st) 190022, ¶ 20. This was also erroneous because the circuit court was divested of jurisdiction to do so, as its only remaining power was to enforce the judgment or correct clerical errors "or matters of form so that the record conformed to the judgment actually rendered." *People v. Flowers*, 208 Ill. 2d 291, 306-07 (2003).

¶ 76    Petitioner argues—as did the *Cooper* court—that nothing in Rule 373 or 12(b)(6) "imposes a temporal limitation that would stand in the way of the appellate court exercising its authority under Rule 615(b)(2) to order a remand for further factual development." See *Cooper*, 2021 IL App (1st) 190022, ¶ 21. We find that inconsequential, as the flip side is that nothing in Rule 373 or 12(b)(6) affords a litigant a *post hoc* attempt at compliance with those rules. Indeed, the lack of language prohibiting a remand is not the equivalent of permitting a remand.

¶ 77    We further reject petitioner's argument that the appellate court was authorized to remand under Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967), as the appellate court must first have jurisdiction to do so. See *People v. Young*, 2018 IL 122598, ¶ 28 (authority under Rule 615(b) "presumes that the issue underlying the requested relief is properly before the reviewing court"); *People v. Bingham*, 2018 IL 122008, ¶¶ 16-18 (under Rule 615(b), appellate court may not exceed "the scope of appellate review"); *Salem*, 2016 IL 118693, ¶ 19 ("The appellate

court's power 'attaches only upon compliance with the rules governing appeals.' " (quoting *People v. Lyles*, 217 Ill. 2d 210, 216 (2005))).

¶ 78 To summarize, in this case, the appellate court correctly followed *Bailey* and concluded that it lacked jurisdiction to remand the cause to allow petitioner to cure the jurisdictional defect by supplementing the record with a compliant certificate of service. 2022 IL App (4th) 220019, ¶ 24. *Cooper* contradicts this court's precedent and is hereby overruled.

¶ 79                                    III. CONCLUSION

¶ 80 For the foregoing reasons, we affirm the appellate court's judgment, concluding that the circuit court lacked jurisdiction to rule on petitioner's untimely motion to reconsider, vacating the circuit court's order denying the motion to reconsider, and dismissing the motion. We reject petitioner's request for this court to exercise its supervisory authority.

¶ 81          Appellate court judgment affirmed.
¶ 82          Circuit court judgment vacated.